UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIDGET ELLEN BEAN, | ) |
|     Plaintiff, | ) |
| v. | ) C.A. NO. 04-1713 PLF |
| RAWLEIN G. SOBERANO, Ph.D., Individually and as President of the ASIAN AMERICAN BUSINESS ROUNDTABLE | ) |
| And | ) |
| ASIAN AMERICAN BUSINESS ROUNDTABLE | ) JURY TRIAL DEMANDED |
|     Defendants. | ) |

**FIRST AMENDED COMPLAINT**
**(DEFAMATION; LIBEL, LIBEL *PER SE*, FALSE LIGHT INVASION OF PRIVACY DISPARAGEMENT-INJURIOUS FALSEHOOD, COMPENSATORY AND PUNITIVE DAMAGES AND INJUNCTIVE RELIEF)**

Plaintiff Bridget Ellen Bean, by her attorneys, John F. Karl, Jr., and Karl & Tarone, sues Rawlein G. Soberano, Ph.D. and the Asian American Business Roundtable hereinafter "AABR") and states:

**I. PARTIES AND JURISDICTION**

1. This Court has jurisdiction pursuant to § 11-921 of the D.C. Code (1981) and removal jurisdiction pursuant to 28 U.S.C. §1446.

2. This Court has personal jurisdiction over the defendants pursuant to D.C. Code §13-423(a) because defendants transact business in the District of Columbia, contract to supply services in the District of Columbia, and caused tortious injury in the District of Columbia by

committing tortious acts in the District of Columbia.

3.  Plaintiff Bean is a resident of Annandale, Virginia.

4.  On information and belief, defendant Soberano is a resident of Maryland.

5.  On information and belief, defendant AABR has its principal place of business in Germantown, Maryland.

## II. BACKGROUND FACTS

6.  Plaintiff Bean is currently the Senior Advisor in the Office of Field Operations at the Small Business Administration ("SBA"). Ms. Bean previously held the position of Associate Administrator for Procurement Policy & Liaison in the Office of Government Contracting and Business Development, Office of Policy, Planning and Liaison.

7.  The AABR is a business association, which claims to represent the interests of Asian-American and other minority businesses. Defendant Soberano is the President of the AABR.

8.  Plaintiff Bean has been an employee of the SBA for nearly 17 years and has an excellent reputation for intelligence, professionalism, and hard work.

9.  On June 17, 2004, plaintiff Bean was removed from her position as Associate Administrator for Procurement Policy & Liaison in the Office of Government Contracting and Business Development, Office of Policy, Planning and Liaison.

10.  On July 1, 2004, defendants Soberano and AABR sent the AABR Business Bulletin (Vol 48. No. 95) into the District of Columbia and published it on their website. Relevant excerpts of this publication are attached hereto as Exhibit A and incorporated herein by reference. In the publication under the subject "Federal Government" the defendants falsely wrote that plaintiff Bean was unqualified for her position as Associate Administrator because they

"finagled" her hiring and because she did not graduate from college. It was also written that she was "busted" and "demoted." The Bulletin also equates plaintiff Bean's name with unqualified employees by suggesting, "... the IG to check the papers of senior officials at SBA! How many Bridget Beans are in its payroll, because they are buddies of John Whitmore..." These statements were defamatory intending to injure plaintiff in her profession and employment, and further, in impugning her to be a liar, manipulator, and to, in effect, have stolen from her employer, and having received her job because she was a friend of then Acting Administrator John Whitmore. Defendants falsely assert that Ms. Bean was demoted because she was not qualified for her position.

11. Defendants failed to contact Plaintiff Bean at any time to ask her the circumstances of her demotion. Defendants never did any reasonable investigation into the events surrounding Plaintiff's demotion.

12. The false statements published by the defendants held plaintiff up to contempt and disgrace and caused her to be shunned and avoided.

13. Plaintiff's counsel demanded a retraction of the false, defamatory and libelous statements made by defendants. Rather than retracting the false, defamatory and libelous, defendants continued their unlawful attack on plaintiff in the September 1, 2004 issue of the AABR Business Bulletin. Exhibit B.

14. Defendants stated in the September 1, 2004 issue of the AABR Business Bulletin that: "*AABR* stands by what it said about the people at SBA in the *July 1 issue* of the Bulletin which it got from a reliable source." Defendants continued: "No threat of a lawsuit or an actual lawsuit will intimidate AABR from backing off is expose'[sic] of "waste, fraud & abuse" involving federal employees." Exhibit B.

15. Defendants further asserted:

> The person who threatened a lawsuit is skating on thin ice. I'm not

> going away. I will see *her* in court *anytime* she decides to go that route. I look forward to it. Her lawyer demands "a retraction of the defamatory statements and compensation for damages" she suffered? Da! Worst combination: dumb and money-hungry. *What was written about her is public knowledge at SBA*. She is getting no money from AABR, and she just opened Pandora's box on her case. For someone who started as a secretary she has gone far, but maybe too far...She just prodded us to investigate her further to see where she came from, how she got where she is, whether she is *overrated and overpaid*. If she is, she has to return what was overpaid. *That's our money. Stay tuned!*

Exhibit B. (emphasis in original)

16. Defendants continued their personal attacks: "Is she doesn't want to be scrutinized, she should stay in the private sector. However, I don't know if she could find an outfit out there willing to pay her what she is currently making *at our expense*." Exhibit B. (emphasis in original).

17. On September 27, 2004, defendants were served with the summons and complaints in this action by certified mail. Exhibit C. That same day defendants sent plaintiff an e-mail that was intended to intimidate plaintiff in the exercise of her rights of access to the courts and to vindicate her rights in a court of law. Exhibit D. Defendants stated:

> Bridget,
>
> I am looking forward to seeing you in court. I have a lot more about you–how you got to SBA, your background, your rapid ascent (pretty unsual (sic)), how Melanie Sabelhaus stripped you of the SES (regardless as to who tried to get you one is irrelevant; what is relevant is that you don't deserve it and everybody at SBA

> knows it. As a matter of fact, you seem to be the only one not to know that you are not qualified. In case you didn't see this issue if the <u>AABR Business Bulletin</u> that came out after I got the letter from your lawyer, here it is, under Section III Federal Goernment. [sic] And I have more on you because I think you are overrated, and I want to make sure that your return taxpayers' money that was paid to you erroneously.
>
> Rawley Soberano

Exhibit D.

18.  On October 13, 2004, defendants sent an e-mail to Susan Walthall, who was also a high-level federal employee with the Small Business Administration. Exhibit E. Defendants demanded Walthallreply to allegations that she "terrorized employees under [her]." Exhibit E.

19.  On October 14, 2004, defendants sent another e-mail to Susan Walthall. Exhibit F. This e-mail was intended to intimidate Ms. Walthall because she had not cooperated with defendants by telling them what they wanted to hear. Exhibit F.

20.  On October 14, 2004, defendants also sent an e-mail to Karen Hontz, who was also a high-level federal employee with the Small Business Administration. Exhibit G. The Hontz e-mail was similar in many respects to the e-mail sent to Walthall on October 13, 2004. Defendants demanded Hontz reply to allegations that she "terrorized employees under [her]." Exhibit G.

21.  On November 16, 2004, defendants published an e-mail entitled "Bridget Bean: Extortionist" that continued the campaign against Ms. Bean. Exhibit H. The article states in part:

> In the July 1 issue of the <u>AABR Business Bulletin</u>, it was reported that Bridget Bean did not stay long as SES, which she did

> not like. She blamed AABR and me for her plight even though I had nothing to do with the decision to demote her. She still cannot accept the decision of the agency that she did not qualify for SES, exacerbated by the fact that JW got her that position. Her attitude seems to be that, if others made it, why not her?

Exhibit H.

22. In the same publication, defendants accused plaintiff of extortion for filing this suit and called her a "scumbag," stating

> Bean did not make SES. No crying or whining will remedy her case unless she wants to take it directly to Melanie Sabelhaus, the Deputy Administrator. She is bent on collecting money anywhere, through SES if that was possible, or through *extortion* if that is another route available. She is trying to extort from AABR and me $500,000 for doing the July 1 report on the abuses of JW, which also mentioned her. She claims that it "defamed" her (standard rationalization of a scumbag), "made her lose a detail assignment" (doubtful), and "for pain & suffering" (after being overpaid for all these years?)

Exhibit H.

23. In this same publication, defendants further maligned plaintiff stating she did not deserve her bonus:

> Thanks to her extortion, we were forced to dig deeper into the JW case. We found additional cases of abuse, one of which points to her as one of the beneficiaries, e.g., how much bonus has she received through the years when JW was wielding his power

without being accountable to anyone?

Exhibit H.

24. Defendants continue to defame plaintiff stating:

> Bean is not only *not SES material*, with credentials that are mediocre at best, but her *flawed judgment* (as an *extortionist*), she is a abomination to public service with her shoddy character. Her kind does not belong in government service.

Exhibit H. (Emphasis in original)

## COUNT I
## (DEFAMATION, LIBEL AND LIBEL *PER SE*)

25. Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶24 above.

26. In publishing and distributing their bulletin on the occasions described above, defendants Soberano and AABR knowingly and repeatedly made the aforementioned false and defamatory statements about plaintiff Bean. In the alternative, defendants Soberano and AABR negligently and repeatedly made the aforementioned false and defamatory statements about plaintiff Bean.

27. Defendants Soberano and AABR published these false and defamatory bulletins and e-mails to their subscribers, member of the United States Congress, and others receiving the bulletins and published the bulletins on their website. Those reading it reasonably understood these bulletins and e-mails to be defamatory.

28. Defendants Soberano and AABR acted with knowledge of the falsity of the statements made about Bean and with the intent to harm plaintiff Bean's chances for further employment when they repeatedly published these false and defamatory statements.

29. Defendant knew, or should have known that plaintiff was not hired because of an alleged personal relationship with Mr. Whitmore. Defendant also knew or should have known that there was nothing questionable about plaintiff's academic record and that plaintiff holds a Bachelor's degree from George Mason University. Defendants published alleged facts about plaintiff's life maliciously and in a reckless manner in order to increase the circulation of their bulletin and to create the false impression that defendants had confidential inside information on the operations of the Small Business Administration.

30. Defendants published statements which falsely state and imply that plaintiff Bean was unqualified and fired from her former position. Ms. Bean was fully qualified for her SES position at SBA.

31. The false and defamatory statements published by defendants Soberano and AABR, harmed the professional and personal reputation of plaintiff Bean, injured Ms. Bean in her trade, profession and business, and impaired her standing and reputation in the community. As a direct and proximate result of defendants' actions, plaintiff she suffered mental anguish, personal humiliation, and damages to her reputation. Defendants failed and refused plaintiff's reasonable request to retract the defamatory statements made about plaintiff.

32. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

## COUNT II
## INVASION OF PRIVACY-FALSE LIGHT

33. Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶32 above.

34. On July 1, 2004, defendants' Business Bulletin (Vol 48. No. 95) was published and included its false and inaccurate recounting of plaintiff Bean's demotion.

35. On the same day, plaintiff Bean was advised by the SBA Director of Congressional Relations that she had been accused of resume fraud by defendants' bulletin, which had been circulated around Capitol Hill and amongst her peers and colleagues,

36. After the article appeared, plaintiff lost a career enhancing assignment, a 6-month detail to a staff position on a legislative committee.

37. Defendants improperly publicized facts about plaintiff which placed plaintiff in a false light by attributing to her conduct and characteristics which were false. These reports were interpreted by the general public and by Ms. Bean's family and friends to be of and concerning Ms. Bean. The statements made by defendants placed Ms. Bean in a false light that made people believe that Bean was "dumb and money hungry," that she had committed a crime by engaging in "extortion," that she was a "scumbag," her judgment was "flawed," and that she was "an abomination to public service with her shoddy character." Exhibits A, B and G.

38. Defendants knew that the facts publicized about the plaintiff's demotion were false, or printed them maliciously and with a reckless disregard for the truth of those facts.

39. The publication of these facts was highly offensive to any reasonable person. As a direct and proximate result of defendants' conduct, plaintiff suffered damages in an amount to be determined at trial.

40. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

## COUNT III
## (DISPARAGEMENT - INJURIOUS FALSEHOOD

41. Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶40 above.

42. Defendants published and issued public statements of and concerning Ms. Bean which falsely stated and implied that Ms. Bean was unqualified for her prior position, that she engaged in resume fraud, that Ms. Bean was "dumb and money hungry," that she had committed a crime by engaging in "extortion," that she was a "scumbag," her judgment was "flawed," and that she was "an abomination to public service with her shoddy character." Ms. Bean has an intangible property interest in her reputation as a public servant. Defendants' statement set forth above damaged and disparaged that business reputation. Ms. Bean's career suffered direct pecuniary loss as result of defendants' disparagement because their actions limited her career advancement and marketability as a civil servant and in the job market outside of the federal government.

43. As a direct and proximate result of Defendants disparagement and injurious falsehoods, plaintiff suffered damages in an amount to be determined at trial.

44. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, for compensatory damages in the amount of $500,000 in compensatory damages and $500,000 in punitive damages, plus interest, reasonable attorney's fees and costs.

Plaintiff further requests the court order defendants to retract all false statements.

Plaintiff further requests the Court grant such other and further relief as the Court deems appropriate, proper and just.

Respectfully submitted,

_____
John F. Karl, Jr. #292458
Karl & Tarone
900 17th Street, NW
Suite 1250
Washington, DC 20006
202.293.3200
202.429.1851 (fax)
Counsel for Plaintiff

**JURY DEMAND**

Plaintiff demands a trial by jury.

_____
John F. Karl, Jr.